UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IVY R. SISSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-00514-JPH-MJD |
| | ) |
| GOWDY, | ) |
| BAKER, | ) |
| MARION COUNTY BOARD OF | ) |
| COMMISSIONERS, | ) |
| KERRY J. FORESTAL, | ) |
| | ) |
| Defendants. | ) |

**Order Denying Motion for Preliminary Injunction**

Plaintiff Ivy Sisson is currently incarcerated at Marion County Jail (the "Jail") in Indianapolis, Indiana. Plaintiff brought this civil rights action contending the Jail conditions are objectively unreasonable in violation of the Fourteenth Amendment. Plaintiff[1] now moves for injunctive relief. For the reasons that follow, his motion is **denied**.

**I. Background**

The facts come from Plaintiff's motion for preliminary injunctive relief, which is signed under the penalty of perjury. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

Plaintiff contends he faces objectively unreasonable conditions of confinement. He states several inmates have been physically assaulted and had their commissary purchases stolen from them. Dkt. 13 at 1. He states this is due to the lack of training, lack of adequate staff, and lack of

---

[1] Plaintiff uses masculine pronouns, *e.g.*, dkt. 6 ¶ 1; dkt. 41 at 9, so the Court does the same. *See Balsewicz v. Pawlyk*, 963 F.3d 650, 652 n.1 (7th Cir. 2020); *see also Dyjak v. Wilkerson*, Nos. 21-2012 and 21-2119, 2022 WL 1285221, at *1 (7th Cir. Apr. 29, 2022) (explaining federal courts' "normal practice of using pronouns adopted by the person before [them]").

1

care and concern of staff, correctional officers, and deputies. *Id.* Plaintiff further asserts that Defendants have not made any attempts to remedy these problems despite being notified. *Id.* Plaintiff seeks the following remedies: 1) transfer to another facility; 2) adequate treatment for gender dysphoria; 3) adequate staffing and training of Jail staff and correctional officers; 4) adequate cleaning supplies, including toilet brushes, shower brushes, towels, and mops; and 5) adequate "safety" for pretrial detainees. *Id.* at 2.

Defendants respond with the affidavit of Colonel James Martin, a correctional officer at the Jail. Dkt. 32-1. Colonel Martin explains the following as it relates to the training of jail staff:

> -The Jail has a general policy of training its correctional officers: #JP7-15. This policy mandates that all newly appointed deputies must receive training and orientation through the MCSO's training academy prior to assignment. This training consists of, but is not limited to: (a) security and safety procedures; (b) emergency and fire procedures; (c) supervision of offenders; (d) suicide intervention/prevention; (e) use of force; (f) offender rights; (g) key control; (h) interpersonal relations; (i) communication skills; (j) standards of conduct; (k) cultural awareness; (1) sexual abuse/assault intervention; and (m) code of ethics. *Id.* ¶ 7.
>
> -#JP7-15 requires that all deputies receive four weeks (160 hours) of on-the-job training. *Id.* ¶ 8.
>
> -#JP7-15 also requires that all deputies must receive forty (40) hours of training, which includes in-service, or other training needed to refine their skills in daily operations of the ADC. At a minimum, this training must include: (1) standards of conduct/ethics; (2) security/safety/fire/medical/emergency procedures; (3) supervision of offenders including training on sexual abuse and assault; and (4) use of force. *Id.* ¶ 9.

Colonel Martin is familiar with the Jail standards for hygiene and cleanliness. *Id.* ¶ 10. First, all jail cells must be inspected by Jail supervisory staff on a daily and weekly basis to ensure jail cells meet the sanitary and hygiene standards. *Id.* ¶ 11. Each housing unit is supplied with a mop, mop head, mop bucket, ringer, trash bag, broom, dust pin, spray bottle, toilet brush, bleach,

and bucket. *Id.* ¶ 23. The jail is also inspected annually to ensure each jail cell meets minimum requirements. *Id.* ¶ 12.

Colonel Martin is likewise familiar with the operations of the Jail and the steps taken to protect inmates. *Id.* ¶ 10. The Jail has an electronic inmate grievance system that allows inmates to file grievances electronically. *Id.* ¶ 16. The grievances are reviewed by personnel to determine if any action needs to be taken. *Id.* ¶ 18. The grievances are then logged in the offender management system to keep a grievance log on all inmates. *Id.* ¶ 19. Inmates are subject to a disciplinary code at the Jail and are informed of the expected conduct requirements through the inmate handbook. *Id.* ¶ 39. Discipline can include "administrative charges, privilege restrictions, disciplinary segregation, and/or referral to the Marion County Prosecutor's Office for possible criminal charges." *Id.* ¶ 40. The Jail contains "surveillance cameras that observe and record almost every possible vantage point so as to increase the amount of inmate observation. This observation, of course, is to both deter improper inmate conduct and allow staff to respond quickly when the need arises." *Id.* ¶ 41. Additionally, "[d]etention deputies conduct regular rounds and inspections to ensure inmate safety and compliance with the conduct expected and outlined in the Inmate Handbook." *Id.* ¶ 42.

As to staffing at the Jail, Colonel Martin admits the jail is not fully staffed. *Id.* ¶ 43. However, the Jail has taken steps to reduce the number of vacancies: it has increased the pay of jail deputies by 10%, and it has added new bonuses and tuition reimbursement to help recruitment. *Id.* ¶ 43. The Jail has also significantly increased its advertising to recruit new employees. *Id.* ¶ 44.

Colonel Martin reviewed Mr. Sisson's grievance history and noted that there only appeared to be one filed related to non-working toilets and cleaning supplies. *Id.* ¶ 20. Colonel Martin explained that Mr. Sisson's toilet was shut off temporarily on March 11, 2022, due to a shake-

down to prevent contraband from being flushed down the toilet. *Id.* ¶ 25. Once the shake-down concluded, water was restored. *Id.* ¶ 26. Mr. Sisson was also informed that he could access cleaning supplies are located in the janitor closet and that to access them, he had to request access from the floor officer. *Id.* ¶ 26.

## II. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490. 501 (7th Cir. 2020) (cleaned up).

## III. Discussion

The court begins and ends with the first element: Plaintiff has not established a likelihood of success on the merits necessary for preliminary injunctive relief. *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 598 (7th Cir. 2022) ("If plaintiffs fail to establish their likelihood of success on the merits, [the Court] need not address the remaining preliminary injunction elements.").

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63

4

(7th Cir. 2020). "A 'strong' showing ... does not mean proof by a preponderance. . . . But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

"[T]o prevail on a claim alleging unconstitutional conditions of pretrial confinement, the plaintiff must [show]: (1) the conditions in question are or were objectively serious . . . (2) the defendant acted purposefully, knowingly, or recklessly . . . and (3) the defendant's actions were objectively unreasonable[.]" *Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring in the judgment); *see also Kemp v. Fulton County*, 27 F.4th 491, 496 (7th Cir. 2022) ("[A] plaintiff . . . challenging the conditions of his pretrial detention need only show that a defendant's conduct was objectively unreasonable.").

Here, Mr. Sisson has not shown he is likely to succeed on his claims. First, he has not shown any of the defendants' actions were objectively unreasonable. The evidence shows Jail officials are subject to intensive training and are required to complete on-the-job training in a variety of areas. Dkt. 32-1 at ¶¶ 7–9. This includes training regarding the safety and security of inmates. *Id.* Each housing unit contains cleaning supplies that are available for inmates, and cells are subject to daily and weekly inspection to ensure cleanliness. *Id.* ¶¶ 10–12, 23. As it relates to the conduct of other inmates, inmates are subject to a disciplinary system, the facility contains surveillance to cameras to monitor inmates' actions, and correctional officers conduct rounds to monitor inmate behavior. *Id.* ¶¶ 41, 42. Although the Jail is understaffed, the Jail has increased deputy pay by 10%, created bonuses and incentives for new employees, and continues to advertise for new officers. *Id.* ¶¶ 43, 44. This evidence fails to show that any of the Defendants' actions were objectively unreasonable.

Second, Mr. Sisson has not provided *specific* evidence demonstrating Defendants acted purposefully, knowingly, or recklessly. He complains that Defendants have failed to rectify the

complaints or grievances against them, but there is no evidence showing exactly *when* he complained and to *whom* he complained. The only grievance identified in Mr. Sisson's personnel file involved the lack of cleaning supplies, and the evidence shows staff adequately responded. *Id.* ¶¶ 20, 26. To demonstrate Defendants acted purposefully, knowingly, or recklessly, Mr. Sisson must have evidence that he notified them of the specific conditions and that they responded inadequately or failed to respond at all. *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (individual defendants cannot be held liable under § 1983 unless they had some personal involvement in the alleged deprivation). Here, beyond vague assertions, no such evidence exists.

Finally, Mr. Sisson has not provided any evidence of causation. Mr. Sisson states several inmates have been physically assaulted and had their commissary purchases stolen from them. Dkt. 13 at 1. He further argues that an inmate was killed by his cell mate in June 2022. Dkt. 39. But he fails to provide specific evidence showing that those acts were caused by inadequate training, staffing, or sanitation supplies. Absent such evidence, his request for injunctive relief must be denied. *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008) (affirming summary judgment on official capacity claim against sheriff where there was no evidence the jail's grievance procedure and "sham" manner in which it was carried out caused the plaintiff's injuries); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("At any rate, we fail to see how the report-filing policy or practice was likely to lead to Moreland's death.").[2]

---

[2] Plaintiff raises additional arguments and presents additional evidence in a "Surreply" filed on September 21, 2022. Dkt. 41. Local Rule 7-1 does not contemplate the filing of a surreply, *see* S.D. L.R. 7-1, and Plaintiff has not provided any justification for one, particularly considering he is the moving party and was afforded an opportunity to file a reply. Plaintiff's surreply, dkt. 41, is therefore **stricken**. *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994) ("[I]t is within the district court's discretion to strike an unauthorized filing."). If Plaintiff wishes to raise these additional arguments and present additional evidence, he must do so in a new motion for injunctive relief, and all supporting evidence must be attached to that motion.

One final matter: Mr. Sisson requests adequate treatment for gender dysphoria, but the complaint in this matter does not contain any claims for such treatment, and so this request must be denied on this ground alone. *See Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) ("[T]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint."); *see also Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) ("A party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (same).

### III. Conclusion

For the foregoing reasons, the motion for preliminary injunction, dkt. [13], is **denied without prejudice**. The **clerk is directed** to **strike** Plaintiff's surreply, dkt. [41].

**SO ORDERED**.

Date: 11/4/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

IVY R. SISSON
MARION COUNTY JAIL
MARION COUNTY JAIL
ADC Mail Room
695 Justice Way
Indianapolis, IN 46203

All Electronically Registered Counsel